UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ZACHARY J. BELT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20-CV-00174-NCC |
| ) | |
| ANDREW M. SAUL, ) | |
| Acting Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Zachary J. Belt ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.*, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 12), Defendant has filed a brief in support of the Answer (Doc. 13), and Plaintiff has filed a reply brief (Doc. 14). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI on July 13, 2017 (Tr. 238-48). Plaintiff was initially denied on October 11, 2017, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 170-71, 179-80). After a hearing, by decision dated June 20, 2019, the ALJ found Plaintiff not disabled (Tr. 78-96). On December 11, 2019, the

Appeals Council issued a decision denying Plaintiff's request for review (Tr. 1-7).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2020 (Tr. 83).  The ALJ found Plaintiff has not engaged in substantial gainful activity since June 16, 2017, the alleged onset date (*Id.*).  The ALJ found Plaintiff has the severe impairments of hyperimmunoglobulin-D syndrome and degenerative joint disease of the right wrist, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 83-85).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations (Tr. 85).  Plaintiff may never climb ropes, ladders and scaffolds (*Id.*).  Plaintiff may never work at unprotected heights or with or around hazardous machinery (*Id.*).  Plaintiff may not more than occasionally stoop, kneel, crouch or crawl (*Id.*).  Plaintiff may not more than occasionally engage in gross manipulation, power gripping or twisting with the right upper extremity (*Id.*).  Plaintiff should also avoid concentrated exposure to extreme cold and vibration (*Id.*).  The ALJ found that Plaintiff is unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy Plaintiff can perform including price marker, photo copy machine operator, and collator operator (Tr. 89-90).  Thus, the ALJ concluded that Plaintiff has not been under a disability from June 16, 2017, through the date of the decision (Tr. 90-91).

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails

2

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to

reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff asserts that the ALJ failed to properly include the effects of Plaintiff's migraine headaches in the RFC determination (Doc. 12 at 7). Specifically, Plaintiff argues that the ALJ erred in determining that Plaintiff's migraine headaches caused by an arachnoid cyst of the brain not to be a severe impairment and Plaintiff was harmed when the ALJ failed to consider the effects of the migraines in the RFC determination (*Id.*). Because the ALJ erred in not finding that Plaintiff's migraine headaches to be a severe impairment, the Court will remand this action to the Commissioner.

At Step 2, the Commissioner must determine whether a claimant has a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. While a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). The RFC determination is the most a claimant is capable of doing despite the combined effects of both the claimant's severe and non-severe impairments. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008).

The ALJ erred in not finding Plaintiff's migraine headaches caused by an arachnoid cyst of the brain to be a severe impairment.  First, Plaintiff listed migraines and arachnoid cyst of the brain as impairments on his application (Tr. 138, 154, 262).  *See cf. Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed).  An arachnoid cyst is a fluid-filled cyst lined with the arachnoid membrane, one of the three membranes protecting the brain and spinal cord.  Such cysts are usually congenital in origin and may cause headaches.  Stedman's Medical Dictionary, 223320 (2014); John Hopkins Med., *Arachnoid Cysts*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/arachnoid-cysts (last visited Dec. 4, 2020).  Indeed, the record is replete with Plaintiff's reports of migraine headaches.  During the hearing, Plaintiff testified that he went to the ER with "stroke-like symptoms" and it "[t]urned out it was a chronic migraine" (Tr. 102).  Plaintiff described these migraines as extreme headaches, encompassing "all my head" with shortness of breath (Tr. 102).  He explained that he experiences "auras" which includes sensitivity to light and/or sound, dizziness, foggy, weird vision, and occasional slurred speed (Tr. 102).  While Plaintiff also testified that his medications helped with his headaches, he also indicated that his doctors recommended that he "stay in the dark" and engage in "slow breathing" like mediation (Tr. 102).  Plaintiff reported getting four migraines a month for varying lengths of time—a few minutes, a few hours or all day (Tr. 122).

The medical record further supports Plaintiff's self-reports.  Plaintiff discontinued work in June 2017 due to headaches (Tr. 102, 475, 496).  Plaintiff initially presented to the emergency room on June 6, 2017, with a headache behind the left eye, shortness of breath, and dizziness with tingling in the left arm (Tr. 452-54).  He was diagnosed with a headache as a result of an

6

arachnoid cyst of the brain and directed to follow up with the brain and spine center (Tr. 454). Plaintiff's diagnoses was confirmed by CT Scan and MRI; "Moderate size arachnoid cyst adjacent to the superior aspects of the anterior portion of the left tentorium" (Tr. 458-59). Plaintiff followed up with neurology and reported that he experienced headaches daily starting on June 6, 2017 (Tr. 497). On August 15, 2017, Plaintiff presented for his first Botox injection (Tr. 489-90). Botox is an FDA-approved treatment for chronic migraines, defined as headache on 15 or more days a month.[1] At that visit, Plaintiff reported daily headaches (Tr. 489-90). At his four-week follow-up, Plaintiff reported that his headaches decreased by a total of 15 days per month with only 13 headaches including 5 migraines over the prior month (Tr. 475-77).

In the interim, consultative examiner Dr. Yasuo Ishida, M.D., after examination on September 5, 2017, noted Plaintiff's reports that he has migraines twice a week that can last all day with treatment and found Plaintiff to have migraine headaches as a result of an arachnoid cyst (Tr. 475-77). Plaintiff presented for his second Botox treatment in November 2017 and, in December, Plaintiff reported a reduction to 10-12 headaches per month, each lasting from 4 hours up to 2 days (Tr. 758, 761-62). A third Botox treatment was administered in February 2018 (Tr. 757-58). While the treatments appear to have been effective in reducing the overall number of headaches Plaintiff had in any given month, reports from March 2018 indicate that the Botox was only working for short periods and Plaintiff was not experiencing any lasting benefits (Tr. 524). In July 2018, Plaintiff reported a month without migraines but that they started again in June, a year after Plaintiff's alleged onset date, with daily headaches (Tr. 528). Plaintiff's medications were updated, accordingly (Tr. 529). In August 2018, Plaintiff reported headaches 7

---

[1] *Botox for Migraine*, Am. Migraine Found. (Jun. 14, 2017), https://americanmigraine foundation.org/resource-library/botox-for-migraine/.

days per month, lasting 8 hours (Tr. 530).  Plaintiff reported 4 headaches per month in November 2018 and had fourth round of Botox treatment (Tr. 532-534).

Relying on the October 11, 2017 report by state agency physician Dr. John Jung, M.D. ("Dr. Jung"), the ALJ found Plaintiff's migraine headaches to be nonsevere as Dr. Jung indicated that the severity of this condition was not expect to meet the durational requirements (Tr. 89). Indeed, in the RFC analysis associated with Plaintiff's concurrent denial, Dr. Jung stated:

> The [claimant] has had recent onset of recurrent headaches suspected to be secondary to an arachnoid cyst.  He was just started on [treatment] and has shown some response.  While [headaches] are still frequent it is anticipated that there will be further improvement now that he is receiving [treatment], and there is no functional deficit.  Severity of condition is not expected to meet duration.

(Tr. 150-51, 167).  At the time of this opinion, as detailed by Dr. Jung, Plaintiff had recently received his first Botox injection and seen significant improvement (Tr. 150, 166).  Plaintiff reported thirteen headaches over the last month, five of them migraines, and an overall decrease in headaches of fifteen days per month (Tr. 150, 166).

In addition to his reliance on Dr. Jung's opinion, the ALJ further detailed some of the medical history as outlined above (Tr. 86-87).  However, the ALJ failed to address any records after March 2018 even though records addressing Plaintiff's migraines were available beyond that period.  Specifically, a November 2018 record indicates that Plaintiff experienced 4 headaches per month and was administered a fourth round of Botox treatment (Tr. 532).  Further, the ALJ appears to have inappropriately relied on the opinion of Dr. Jung, a state agency physician, whose opinion reflected the records from a point early in the relevant period.  The ALJ also failed to address the apparent conflict between the conclusion of Dr. Jung that the condition was not expected to meet the durational requirement and the entirety of the medical record, especially those records from Plaintiff's treating neurologist.  *Noerper v. Saul*, 964 F.3d

8

738, 747 (8th Cir. 2020) (finding the Commissioner had failed to meet his duty to develop the record when the ALJ relied on the opinion of a state agency physician predating the majority of treatment and failed to properly discuss a choice between conflicting medical evidence).

Finally, and perhaps most importantly, the ALJ did not consider Plaintiff's migraine headaches when determining Plaintiff's RFC.  *Ford*, 518 F.3d at 981.  *See also Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").  Instead, in addressing Plaintiff's migraine headaches, the ALJ found the migraine headaches to be nonsevere as the severity of Plaintiff's condition would not meet the durational requirement (Tr. 89).  In doing so, the ALJ noted that Dr. Jung found that Plaintiff was not experiencing any functional deficit (*Id.*).  Indeed, the ALJ's RFC determination does not apparently include any limitations relating to Plaintiff's migraine headaches (Tr. 85).  *Cf. Givans v. Astrue*, No. 4:10-CV417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC).  Instead, the Commissioner asserts that Plaintiff's cognitive tasks appear to be largely unaffected as indicated by Plaintiff's activities of daily living, specifically Plaintiff's testimony that he was attempting to complete his GED (Doc. 13 at 7).  Plaintiff testified that he was working on his own to study for his GED and taking the necessary series of tests as scheduled (Tr. 101, 108-09).  As noted by the

9

Commissioner, Plaintiff also plays video games (Tr. 299, 304). However, Plaintiff indicates that the way in which he engages in these activities has significantly changed in light of his impairments; "[f]or all of my hobbies and interests, they very [sic] in change due to my . . . headaches, due to my cyst on brain" (Tr. 299-300). He notes that whenever he does physical activity he has "stroke like symptoms" (Tr. 302). As indicated above, these assertions are supported by the medical record. Just because Plaintiff may be capable of completing some activities, such as studying on his own time for his GED, does not necessarily mean that he would be able to maintain competitive employment. A claimant need not be totally bedridden to be disabled. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005); *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999). *See also Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009) ("[Plaintiff's] ability to engage in some life activities, despite the pain it caused her, does not mean she retained the ability to work."). Further, as recently as November 2018, Plaintiff reported headaches 4 times a month lasting 8 hours and the vocational expert in this case testified that competitive employment would be precluded if an individual would consistently miss two or more days a month or would have to show up late to work, leave work early, or step away from work for the equivalent of an additional break time at a random time, once a week (Tr. 134).

Accordingly, the Court finds that remand is required because the ALJ's determination that Plaintiff's migraine headaches were not a severe impairment is not supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to reconsider Plaintiff's severe impairments at step two; further develop the

medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 28th day of December, 2020.

                                                  /s/ Noelle C. Collins
                                         NOELLE C. COLLINS
                                         UNITED STATES MAGISTRATE JUDGE